# STATE OF VERMONT

# ENVIRONMENTAL COURT

Appeal of Margaret Murray  }
         }
         }  Docket No. 181-8-02 Vtec
         }
         }

Decision and Order

Appellant Margaret Murray appealed from a decision of the Planning Commission of the City of Montpelier, approving a fence proposed to be erected on adjacent property. Appellant is represented by Richard Linton Brock, Esq.; Appellee-Applicants Robert J. Buchicchio and Harriet R. Buchicchio appeared and represented themselves; the City of Montpelier is represented by Amanda S.E. Lafferty, Esq. Just prior to the hearing the parties agreed that Question 3 of the Statement of Questions had been resolved and was withdrawn, that Question 4 was withdrawn, and that the applicable Zoning Regulations were those containing amendments through January 10, 2001, which took effect as of January 31, 2001. As of that time the City withdrew from further participation in the appeal.

The only remaining issue in the appeal was then " whether the application for the proposed fence meets the requirements of the applicable zoning ordinance provisions, with special emphasis on the design control district criteria. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took several site visits alone, by agreement of the parties, at different times during the day, and at different seasons of the year, to observe, among other things, the pattern of shadows cast upon the property absent the proposed fence. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellant owns a side-by-side duplex residential building and lot at 150 Elm[1] St. It was damaged in the 1992 flood and Appellant is repairing and renovating it. She lives in one unit and is restoring the other unit. Appellee-Applicants own the adjacent property to the northeast at 156-158 Elm Street. It is a four-unit residential building, a portion of which is used for Appellee-Applicants' mental health counseling office. Both buildings date from the late nineteenth century, as do most of the other buildings along both sides of Elm and Spring Streets in the immediate vicinity. Both buildings are located on their lots very close to the sidewalk of Elm Street. The back yards of the nearby Elm Street and Spring Street properties adjoining or visible from the back yards of these two properties contain some accessory buildings such as garages or sheds, and some open picket fences, open rail fences, open wire fences, and opaque stockade-type fences. The area contains mixed commercial and residential uses on both sides of Elm Street and is located a few blocks from the downtown business area.

The property line between the two properties runs very close to Appellant's building. The driveway between the two buildings is located on and is for the exclusive use of Appellee-Applicants' building. Appellant has access to a parking area to the rear of her building via a driveway located on the other side of her building.

Appellee-Applicants propose to erect a fence[2] running along the common boundary, located approximately one foot on their side of the common boundary, beginning at the front corner of a garage located at the rear corner of their property, and extending towards Elm Street for a length of 100 feet. The front end of the fence would end approximately 32½ feet (by scale from Exhibit C) from the near edge of the sidewalk on Elm Street and approximately 15 feet back from the front corner of Appellant's house (or approximately 20 feet back from the front of her front porch). The fence is proposed to be a solid wood fence six feet in height[3], and is proposed to be finished with a stained finish. Its proposed appearance is attractive and its design is neutral as to architectural period; that is, it would blend well with the building types in the neighborhood.

Appellant's building has two ground-floor windows on the side of the house facing the proposed fence, and a side porch near the rear of the building, with kitchen windows looking out onto the porch. The two ground floor side windows appear from the photographs in evidence to extend from approximately three feet above ground level to approximately eight or nine feet above ground level. The fence would not appreciably block the view diagonally towards Elm Street from the side window closest to the street. The fence would block the approximately the lower half of both side windows, and thereby partially block the view directly across the driveway, although the upper portions of the windows would not be blocked and would allow light and air to enter the corresponding ground floor rooms through approximately the upper half of each window. The fence would pass closest to the side porch and would block the lower portion of the porch. While it would not block the view of a person standing on the porch, it would block the view of a person sitting or lying on a couch or chair located on the porch. Appellant has in the past used this porch as a storage area for household goods, but intends to clean it up in connection with her general renovations of the property. Because the proposed fence would be located so close to Appellant's buildings, it is necessary to require that the upper portion of the fence, as it extends along the side of the porch and building, be constructed of a lattice that will allow the passage of filtered light to mitigate the blocking effect of the fence from the two side windows and the porch.

The fence would not appreciably block direct sunlight from reaching the side porch or the side windows, as the path of the sun is such that the placement and orientation of the two buildings already block direct sunlight from falling on any portions of that side of Appellant's building that would be blocked by the fence.

Because the property line runs so close to Appellant's building, the fence must be constructed to avoid future conflicts between the parties due to necessary maintenance of the fence or of Appellant's building. Accordingly, the fence shall be constructed (for example, by constructing in sections that pivot horizontally from a high pivot-point, or are removable) to allow for future maintenance of the fence near the property line without going onto the Murray property, and to allow for any necessary future maintenance of the facing side of the Murray property.

With the conditions discussed in this decision, the proposed fence meets the design review (§ 506(F)) and site plan criteria (§ 507(F)(1)) of the Montpelier Zoning Regulations. In particular, its design and materials are compatible with the other properties in the district and the historic style of the neighborhood properties. If painted or stained with a color, the color will be compatible with either of the adjoining buildings. Although the criterion requiring recognition of and respect for ' view corridors and significant vistas' may not be applicable to the view of the street from inside one private house down a neighbor's private driveway, the placement of the front end of the fence does protect the diagonal view from Appellant's side window towards Elm Street. After construction of the fence, on both properties the traffic access, circulation, parking, landscaping, and renewable energy resources remain as before, while the screening of each property from the other is improved.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicants' application to construct a fence at 156-158 Elm Street, beginning at the front corner of the garage in the back yard (marked as Garage #5 on Exhibit C) and running towards the street for a distance of 100 feet, is approved under the Montpelier Zoning Regulations, subject to the conditions that:

1. The top cross piece of the fence shall extend no more than 6 feet in height above the surface of the ground. It may be entirely opaque adjacent to the back yard of Appellant's property. Adjacent to Appellant's house building and side porch, it shall be opaque in nature to no more than approximately[4] four-and-a-half feet above the ground; that is, at least approximately the upper 18" of the fence shall be constructed of a lattice design, such as that shown as the bottom photograph on the third page of Exhibit B, capable of allowing filtered light to pass through. The top of the fence may contain a solid board top or cross piece as necessary for structural integrity.

2. The fence shall be constructed of wood with a clear or opaque stained or painted finish, and shall be finished on both sides and equal in quality on both sides. If a colored stain or paint is applied, it shall be of a color compatible with the paint scheme of either Appellant's or Appellee-Applicants' building. It shall be set back from the common property line at least one foot onto Appellee-Applicants' property and shall be constructed (such as with pivoting sections or removable sections) to allow for future maintenance of the fence near the property line without going onto Appellant's property, and to allow for any necessary future maintenance of the facing side of Appellant's building.

Dated at Barre, Vermont, this 3rd day of October, 2003.

_____

Merideth Wright
Environmental Judge

## Footnotes

1. Formerly known as 150-152 Elm St.

2. Evidence was presented by both parties as to a history of conflict between the parties over the behavior of dogs kept on Appellant's property, including inside the front room of Appellant's house, towards Appellee-Applicants' tenants and counseling clients. While this may have been the rationale for the fence and is important to both parties, it is not, strictly speaking, relevant to the standards by which this application is to be reviewed under the Zoning Regulations, other than the need for screening of the two properties from each other.

3. As shown in the top photograph on the third page of Exhibit B.

4. These proportions are given as approximate so that this condition can be met with commercially available stock fencing; the Court specifically does not require the fencing to be custom-built to meet these proportions.